IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA TELLIS, individually and on behalf of the class defined herein, ) ) ) | |
| Plaintiff, ) ) | Case No.: 08 CV 2854 |
| v. ) ) | Judge: Darrah |
| CSGA. LLC, BRONSON & MIGLIACCIO, LLP, H. BRUCE BRONSON, JR. and RICHARD J. MIGLIACCIO, ) ) ) ) | Magistrate Judge Cox |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(B)(6)**

6354151v2 889660 68212

Plaintiff claims that CSGA, the owner of her debt, violated the Fair Debt Collection Practices Act, 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f ("FDCPA"), the Illinois Collection Agency Act, 225 ILC 425/8b ("ICAA") and the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") by filing a state court lawsuit for collection of her debt without attaching an assignment document that complies with Section 8b of the ICAA to it. (See Plaintiff's Complaint, referred to hereafter as "Cpl."). Essentially, plaintiff's FDCPA[1] and ICFA claims are derivative of plaintiff's ICAA claims. Plaintiff's argument fails for the following reasons:

- The "assignment for collection" provision of ICAA Section 8b does not apply to CSGA because it is the owner of plaintiff's debt,

- No private right of action exists under the ICAA because the January 2008 amendments now include remedies under the ICFA for a violation of the ICAA,

- Even if the ICAA applies, it does not require an assignment be attached to the collection complaint,

- Plaintiff fails to allege actual damages as required under the ICAA and ICFA,

- The FDCPA should not be used to challenge Illinois pleading practices, and

- CSGA has not engaged in any acts in violation of the ICFA.

**SUMMARY OF RELEVANT ALLEGATIONS OF COMPLAINT**

CSGA is engaged in the business of purchasing charged-off consumer debts and enforcing the debts against consumers. (Cpl. ¶22). CSGA is alleged to be a collection agency as that term is defined in the ICAA. (Cpl. ¶27). On or about April 8, 2009 (sic), CSGA filed suit through its counsel Bronson & Migliaccio, LLP against Tellis in the Circuit Court of Cook County to collect a debt from her. (Cpl. ¶32). The complaint did not attach an assignment and plaintiff claims that as a result, CSGA violated Section 8b of the ICAA (Cpl. ¶¶33,59). Plaintiff claims that CSGA violated Section 9 of the ICAA by "attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist." (Cpl. ¶60). Plaintiff claims that CSGA's conduct in violating the ICAA also constitutes unfair and

---

[1] The only claims against Bronson & Migliaccio, LLP, H. Bruce Bronson and Richard J. Migliaccio are in Count III of the Complaint and are solely based on violations of the FDCPA.

deceptive acts and practices under the ICFA. (Cpl. ¶65). Finally, plaintiff claims that CSGA's ICAA violations make all defendants liable under the FDCPA. (Cpl. ¶51).

## ARGUMENT
### A. COUNT II - ICAA

**1. Section 8b does not apply to CSGA- a debt buyer who owns her debt.**

Plaintiff's theory rests on an incorrect interpretation of Section 8b of the ICAA and a misapplication of that section to debt buyers. Plaintiff wrongly claims that the ICAA was amended January 1, 2008 to "define debt buyers as 'collection agencies'" and "make[s] applicable the special assignment requirements in ICAA §8b, 225 ILCS 425/8b" to them. (Cpl., ¶9). On the contrary, the amendment had nothing to do with the alleged documentation required to be attached to collection complaints but had everything to do with efforts to harmonize Illinois law with the FDCPA.

Plaintiff follows that claim with an incomplete block quotation of Section 8b (Cpl., ¶10) which omits the heading of the Section- "Assignment for Collection"- and thus completely misconstrues the purpose of the provision.

Contrary to plaintiff's theory, assignments <u>for</u> collection do not apply to debt buyers who purchase accounts pursuant to assignments in which all rights and ownership interest are transferred. On the contrary, assignments for collection have a long history and developed in the law as a way to permit an assignee to file suit on the basis of naked legal title alone. *See Sprint Communications Co., L.P., et. al. v. APCC Services, Inc., et. al.,* 128 S.Ct. 2531, 2538-39, 2008 WL 2484712 (U.S.Dist.Col. 2008)("Thus, during the 19th century, most state courts entertained suits virtually identical to the litigation before us: suits by individuals who were assignees for collection only, i.e., assignees who brought suit to collect money owed to their assignors but who promised to turn over to those assignors the proceeds secured through litigation."). Not only does plaintiff's application of Section 8b ignore the long history and meaning of the words "assignment for collection," it is inconsistent and contradictory with other provisions of Section 8 of the ICAA.

    a. **"Assignment for Collection."**

The plain language of Section 8b demonstrates that it applies to assignments <u>made for the purpose of collection</u>, and not to assignments in which <u>all rights</u> are transferred to the assignee. The Supreme Court recently addressed this distinction when it considered whether an assignee of

2

a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor. *Id*. at 2533. The Court discussed the history and development of assignments for collection, noting that assignments for collection are those founded on the transfer of legal title alone- not ownership. The Court stated:

> The history and precedents that we have summarized make clear that courts have long found ways to allow assignees to bring suit; that where assignment is at issue, courts- both before and after the founding- have always permitted the party with <u>legal title alone</u> to bring suit; and that there is a strong tradition specifically of suits by assignees for collection. *Id*. at 2541. (emphasis added).

The transfer of legal title only defines an assignment for collection. Thus, it does not transfer the "beneficial ownership" to the assignee, but it vests legal title in the assignee, empowers the assignee to collect and permits the debtor to "discharge himself by making payment to the assignee." *Ecker v. Big Wheels, Inc.,* 136 Ill.App.3d 651, 654, 483 N.E.2d 639, 642 (4th Dist. 1985).[2]

Plaintiff's citation to *Business Service Bureau, Inc. v. Webster*, 298 Ill.App.3d 257, 698 N.E.2d 702 (4th Dist. 1998) is consistent with defendant's interpretation of "assignments for collection" vs. assignments of ownership. (Cpl., ¶9). Plaintiff cites the *Webster* case for the proposition that "Illinois courts had held prior to the amendment that a party that was required to but did not have such an assignment does not have a valid claim and that the defendant in such a case is entitled to judgment." (Cpl., ¶9). The *Webster* case involved a medical debt that was <u>assigned for collection</u>. The assignment at issue stated:

> For valuable consideration of an agreed to percentage of the amount collected, and pursuant to the Collection Agency Agreement, the undersigned representative of ARROW MEDICAL SERVICES, hereby assigns all of its rights, title and interest in and to the following named delinquent accounts owing by the person or

---

[2] *See also Schoonmaker v. Lawrence Brunoli, Inc.,* 265 Conn. 210, 228, 828 A.2d 64, 80 (Conn. 2003)("under the doctrine of assignment for collection, the assignor does in fact retain an equitable ownership, and therefore, substantial rights, in the action assigned"); *DeBenedictis v. Hagen*, 77 Wash.App. 284, 289, 890 P.2d 529, 532 (Wash.Ct.App. 1995)(distinguishing between an assignment in which entire ownership is transferred and an assignment for collection in which legal title only is transferred); *Stanislaus Pump, Machinery & Construction Corp.*, 200 Cal.App.3d 1442, 1447, 246 Cal.Rptr. 601 (Cal.Ct.App. 1988)("when an assignment is made for collection or as collateral security, the assignor retains the equitable interest in the thing assigned and therefore can maintain an action for its recovery.").

3

persons so specified to BUSINESS SERVICE BUREAU, to sue for and take all legal steps that may be deemed proper or necessary to affect collection thereof, in such company's own name. *Id.* at 258.

The assignment gave Business Service Bureau the right to sue or take other legal steps to collect in its name, and if successful it only kept a contingency fee. Arrow Medical Services still maintained beneficial ownership and the right to proceeds recovered. It is not surprising then, that Section 8b applied to the assignment because it was an "assignment for collection."

On the other hand, in this case, the assignment is one in which ownership interest is transferred. Plaintiff acknowledges this, alleging CSGA "is engaged in the business of purchasing charged-off consumer debts and enforcing the debts against the consumers." (Cpl., ¶22). Plaintiff further states that CSGA is a "debt buyer" that pays for the debts it purchases and claims to have purchased plaintiff's debt. (Cpl., ¶¶13, 23, 32).

There are no allegations that CSGA filed suit against plaintiff pursuant to an <u>assignment for collection</u> or that CSGA filed suit on behalf of or for the benefit of any other entity. On the contrary, the Complaint demonstrates that CSGA filed suit for itself as owner of plaintiff's account and retained the law firm of Bronson & Migliaccio, LLP to represent it in such suit.

    b.    **Section 8b applies to an entity that gets legal title, not beneficial ownership.**

Section 8b states:

425/8b Assignment for Collection

§8b. Assignment for collection. An account may be assigned to a collection agency for collection with title passing to the collection agency to enable collection of the account in the agency's name as assignee for the creditor provided…

The plain language of Section 8b demonstrates that it applies to the circumstance in which legal title is passed to the collection agency to enable the agency to engage in collection activities as the <u>assignee for the creditor</u>. *See Sprint Communications Co., L.P. v. APCC Services, Inc.*, 128 S.Ct. 2531, 2008 WL 2484712, (2008)(holding that assignee filing suit pursuant to assignment for collection can file suit in its own name). Section 8b did not change

4

pursuant to the January 2008 Amendment. It has been in its current form since January 1, 1996 and does not apply to debt buyers who purchase accounts and obtain beneficial ownership.[3]

The ICAA defines "creditor" as "a person who extends consumer credit to a debtor." 225 ILCS 425/2. CSGA is not a creditor under the ICAA. CSGA purchases debt after it is charged off. (Cpl, ¶22). It owns plaintiff's debt. CSGA retained a law firm, Bronson & Migliaccio, LLP to sue plaintiff to collect her unpaid debt in state court. While defendant did not extend credit to plaintiff, it acquired ownership of the debt and stepped into the shoes of the assignor for <u>all</u> purposes.[4] Plaintiff's interpretation makes "for the creditor" superfluous, and statutes can not be interpreted in ways to make words superfluous.

Further, the fact that Section 8b applies only to assignments for collection in which title is transferred but not ownership is consistent with Section 8a-1 of the Act which provides in part:

> 425/8a-1. Collection action
> §8a-1. (a) No account may be referred by a collection agency to an attorney unless, prior to placing an account with an attorney for further collection action, each account creditor is notified in writing by the collection agency of the collection agency's intent to refer the account to an attorney…

Section 8a-1 and 8b address the circumstance in which a third party collection agency files suit, but ownership of the account remains with the creditor - not the circumstance in which a collection agency has acquired ownership of the debt and files suit on its own behalf. For example, it would be ludicrous to require a debt buyer who has acquired all rights to a debt pursuant to an assignment to notify the original creditor of its intent to file suit for collection of the debt. Once the account is sold pursuant to an assignment, the original creditor no longer has an interest in the account. Since CSGA did not acquire plaintiff's debt pursuant to an assignment for collection, Section 8b does not apply to its collection complaint.

---

[3] Section 8b also does not apply where an entity refers an account (*i.e.* assigns an account) to an agency, which is specifically addressed in Section 8b(d). *See* 8b(d)("No assignment shall be required by any agreement to list a debt with a collection agency as an account for collection.").

[4] *See PRA III, LLC v. Hund,* 364 Ill.App.3d 378, 382, 846 N.E.2d 965, 968 (3rd Dist. 2006)("The assignee, by acquiring the same rights as the assignor, stands in the shoes of the assignor."); *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285 (7th Cir. 2005)(pursuant to common law of assignments, assignee assumes rights as well as duties of assignor), *see also Vickey v. Asset Acceptance, LLC*, 2004 WL 1510026, *2 (N.D.Ill. 2004).

5

**2.    The January 1, 2008 amendment eliminated the need for a private right of action.**

Plaintiff's ICAA claim should also be dismissed because the ICAA does not provide for a private right of action in these circumstances. Plaintiff's citation to *Sherman v. Field Clinic*, 74 Ill. App. 3d 21 (1st Dist. 1979) for the proposition that a private right of action now exists is wrong. (Compl., ¶61)[5].

This jurisdiction has questioned whether the former version of the ICAA should be interpreted to imply a private cause of action. *See McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 751-52 (N.D. Ill. 2003). As the Court stated in *McCabe*, 272 F. Supp. 2d at n. 16:

> The ICAA gives responsibility to the Department of Professional Regulation to enforce any violations of the ICAA and clearly contemplates enforcement through Department action. 225 ILCS 425/9(a). We are, therefore, not convinced that the ICAA should be interpreted as providing an implied private cause of action.

However, courts have followed *Sherman v. Field Clinic*, 74 Ill. App. 3d 21 (1st Dist. 1979), in implying a private right of action into the ICAA under certain circumstances. *See McCabe*, 272 F.Supp.2d at 751 ("While we are not entirely convinced that the ICAA should be interpreted to imply a private right of action, we will presume for now that it does."). In *Kim v. Riscuity, Inc.*, 2006 WL 2192121, *3 (N.D.Ill), the court implied a private right of action based on the application of five factors: (1) whether the alleged action contravenes Illinois public policy; (2) whether the plaintiff is within the class of individuals the statute is designed to protect; (3) whether the injury alleged is within the range of injuries the statute is designed to protect; (4) whether there is a need for a civil action for damages under the statute; and (5) and whether the statute limits the remedies available. *Kim* at *3 citing *Sherman*, 74 Ill. App. 3d at 29-30. All of the cases that have previously analyzed these five factors have done so using the pre-January 1, 2008 version of the ICAA.

However, on January 1, 2008, the ICAA was amended adding Section 9.7 which provides:

> Enforcement under the Consumer Fraud and Deceptive Business Practices Act. The Attorney General may enforce the knowing violation of Section 9 (except for items (1) through (9) and (19) of subsection (a)), 9.1, 9.2, 9.3, or 9.4 of this Act as an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act. 225 ILCS § 425/9.7

---

[5] Moreover this court is not bound by the *Sherman* opinion.

6

Section 9.7 explicitly provides for remedies that can be obtained under the ICAA via enforcement actions by The Illinois Attorney General. These damages include civil damages, such as restitution through the Illinois Consumer Fraud Act. The new Section 9.7 also explicitly limits the remedies available (remedies available for knowing violations of Section 9(a)(10)-9(a)(18), 9.1, 9.2, 9.3 and 9.4 but specifically excluding civil remedies for Section 9(a)(1)-9(a)(9) and 9(a)(19)). The prior versions of the ICAA had no such provisions for Illinois Attorney General enforcement actions and now such remedies are specifically contained within the text of the ICAA.

As a result of the January 1, 2008 amendments to the ICAA, *Sherman* requires a different outcome in this case. The cases that interpret *Sherman*, such as *Kim*, that previously implied a private right of action in the ICAA, now dictate the opposite result in this case.

Under the first factor, a court looks at whether the alleged action contravenes Illinois public policy. *Kim* at *3 *citing Sherman*, 74 Ill. App. 3d at 29-30. In *Kim*, the action alleged was that the defendant violated the ICAA in sending improper collection letters to plaintiff. *Kim* at *1. In *Sherman*, the action alleged was that the defendant violated the ICAA in sending letters and making telephone calls to plaintiff. *Sherman* at 23. The courts in *Sherman* and *Kim* held that Illinois public policy, which is specifically declared in the ICAA, (now at 225 ILCS § 425/1a), intended to provide protection from such conduct. *Sherman* at 29-30; *Kim* at *3. Therefore, the courts found that the first factor was satisfied in those cases.

In this case, the action alleged is the filing of a lawsuit without an assignment attached to the suit. Whether or not something is or is not attached to a complaint is a far cry from abusive calls and improper letters sent to a person at his or her home. The conduct at issue here does not contravene Illinois public policy and as a result, the first *Sherman* factor weighs against implying a private right of action into the ICAA.

Under the second factor, a court looks at whether the plaintiff is within the class of individuals the statute is designed to protect. *Kim* at *3 *citing Sherman*, 74 Ill. App. 3d at 29-30. In this case, plaintiff is a litigant defendant in a state court lawsuit. The ICAA is not intended to apply to perceived procedural deficiencies of a state court pleading, rather the Illinois courts are capable of policing their own dockets. Therefore, in this case, the second *Sherman* factor also weighs against implying a private right of action into the ICAA in this case.

7

Under the third factor, a court looks at whether the injury alleged is within the range of injuries the statute is designed to protect. *Kim* at *3 *citing Sherman* at 29-30. Again, in *Sherman* and *Kim*, the plaintiffs were allegedly being harassed by the manner in which collection letters and phone calls were made to them- conduct which those courts found was governed by Section 9. *Sherman* at 23; *Kim* at *1. In this case, plaintiff does not even allege that she was injured. As stated more fully in Section A(3), plaintiff fails to allege that she was injured or suffered any actual damages as a result of defendant's alleged failure to attach an assignment to its state court collection pleading. Plaintiff has not been injured- there is nothing for the ICAA to protect her against. Moreover, even if she had alleged an injury as a result of CSGA's alleged failure to attach an assignment to its collection suit, Illinois already has a court system designed to address such conduct and Illinois state court judges are capable of addressing alleged pleading deficiencies. Therefore, the third *Sherman* factor weighs against implying a private right of action into the ICAA in this case.

Under the fourth factor, a court looks at whether there is a need for a civil action for damages under the statute. *Kim* at *3 *citing Sherman* at 29-30. This is arguably the most important and most heavily relied upon factor by *Sherman* and its progeny. Prior to January 1, 2008, there was no Section 9.7 drafted into the ICAA, which now provides for Illinois Attorney General enforcement of the ICAA through the ICFA. Therefore, in finding there was a need for a civil action for damages in the pre-January 1, 2008 ICAA, the *Sherman* court stated:

> The act contains no provision for compensating debtors for their injuries and therefore provides little incentive for them to seek enforcement of the Act. Although an aggrieved debtor may derive some psychological satisfaction from the suspension or revocation of a collection agency's certificate … from the criminal prosecution of an offending agency, it seems unlikely that most debtors will initiate and pursue their complaints through all the steps in the administrative or criminal justice processes in the absence of any tangible reward. *Id.* at 29-30.

In other words, prior to January 1, 2008, the ICAA only provided for regulation through the Illinois Department of Professional Regulation, and even where it did, it only allowed for the "suspension or revocation of a collection agency's certificate" or other criminal type penalties. This arguably did not provide for compensation or other remedies for plaintiffs, or at the very least, did not provide an incentive for them to seek enforcement through that Department.

Section 9.7, on the other hand, provides debtors with a mechanism (and incentive) to obtain compensation, restitution and/or civil remedies through enforcement actions brought by

8

the Illinois Attorney General on their behalf. The remedies available under the ICFA are broad and include restitution and civil penalties. 815 ILCS § 505/7. The January 1, 2008 addition of Section 9.7 to the ICAA has eliminated the rationale which prior courts cited in implying a private right of action in the ICAA. Due to the inclusion of Section 9.7 into the ICAA, the fourth *Sherman* factor now weighs strongly against implying a private right of action into the ICAA in this case.

The fifth factor also supports this conclusion. Under the fifth factor, a court looks at whether the statute limits the remedies available. *Kim* at *3 *citing Sherman* at 29-30. In *Kim* and *Sherman*, because the courts were analyzing former versions of the ICAA that did not contain Section 9.7, they held that there were no such limits in the ICAA. *Sherman* at 29-30; *Kim* at *3. Now, the result should be the opposite.

Section 9.7 not only provides for new available remedies but it also explicitly limits those remedies to knowing violations of Section 9(a)(10) through 9(a)(18), and 9.1, 9.2, 9.3 and 9.4. Perhaps, more importantly, Section 9.7 specifically excludes civil remedies for violations of Sections 9(a)(1) through 9(a)(9) and 9(a)(19). In other words, the Illinois legislature clearly intended to provide for new remedies for plaintiffs through the ICAA and also specifically expressed its intent to exclude remedies available to plaintiffs for other specifically defined conduct. Therefore, Section 9.7 not only explicitly demonstrates intent by the legislature to define what and when remedies are available for certain specific conduct but also demonstrates intent to limit those remedies. Since Section 9.7 limits the remedies available, the fifth *Sherman* factor weighs strongly against implying a private right of action into the ICAA.

This Court should distinguish *Sherman* and *Kim* due to their analysis of older versions of the ICAA that are no longer applicable and because they involve factual circumstances that differ from this case. As a result of the January 1, 2008 amendment, the ICAA should not be held to imply a private right of action in these circumstances and plaintiff's ICAA claim should be dismissed as a result.

        **3.    Assuming, *arguendo*, the ICAA applies, there are no actual damages here**.

Plaintiff's ICAA claim should also be dismissed because there are no actual damages pled. The cases addressing ICAA hold that a private cause of action under the ICAA requires a showing of actual damages. *McCabe*, 272 F. Supp. 2d at 751 (private right of action under ICAA rejected because no actual damages); *Trull v. GC Servs. Ltd., P'ship*, 961 F. Supp.1199,

9

1207, 1208 (N.D.Ill. 1997)(private right of action under ICAA rejected and ICAA claim dismissed because no actual damages); *Fuiten v. Creditor Servs. Bureau of Springfield, Inc.*, 2007 WL 1582459, * 7 (C.D.Ill. 2006)(private right of action under ICAA rejected and ICAA claim dismissed because no actual damages); *see also Kim v. Riscuity*, *2 (actual damages sufficiently pled to state ICAA claim). Here, plaintiff does not allege any actual injury and plaintiff cannot allege any actual damages that were sustained due to CSGA's alleged failure to attach an assignment document to a state court pleading. Plaintiff pleads that "the filing of collection lawsuits is regularly picked up and reported by credit bureaus." (Cpl., ¶69). Plaintiff does not claim, however, that anything was reported on her credit report or that her credit was damaged as a result of CSGA's alleged failure to attach an assignment document to the collection complaint. Plaintiff's speculative allegation regarding credit bureau reporting is insufficient to plead actual damages and no actual damages are alleged to substantiate a class ICAA claim. Without actual damages, the ICAA count fails.

    **4.    Assuming, *arguendo*, the ICAA applies, it does not require the assignment be attached to the collection complaint.**

Even if the court finds the ICAA is applicable, the ICAA contains no requirements about the form a state court pleading to collect a debt should take. The plain language of Section 8b undermines plaintiff's theory that it (Section 8b) requires assignments to be attached to state court collection complaints. On the contrary, Section 8b provides that it applies to an "assignment for collection" (Section A(1)) and it then sets forth what information the assignment documents must contain to establish the assignment is valid. For instance, under Section 8b(a)(i) and (ii), the assignment must be evidenced by a written agreement that has an effective date and the consideration paid. Section 8b(b) addresses how consideration must be paid. Section 8b(c) states all assignments must be voluntary and Section 8b(d) provides that no assignment is required to list a debt with a collection agency as an "account for collection." Section 8b(e) provides that no litigation can be filed "in the name of a licensee as plaintiff" unless certain criterion are met. There is no provision in Section 8b that states an assignment must be attached to anything, much less a state court pleading to collect a debt.

The absence of statutory support for plaintiff's theory in the ICAA is not the only grounds for dismissal. Under plaintiff's logic, if CSGA had to attach its assignment to the state court pleading, it would attach a document that is likely thousands of pages, representing a list of

10

accounts and account information regarding thousands of accounts purchased in a single portfolio. Accordingly, CSGA would have to produce not only its assignment paperwork, such as a bill of sale, but also documentation identifying the accounts that were part of the assignment. The assignment would also have the consideration which would have to be redacted as privileged under the terms of CSGA's purchase agreement. When put into practice, plaintiff's logic here is unrealistic, burdensome, time consuming and expensive- it would be particularly onerous on the municipal division of the circuit courts to retain collection complaints containing thousands of pages of documents.[6]

Plaintiff tries to support her claim that an "assignment must be attached to the complaint" by citing *Candice Co. v. Ricketts*, 281 Ill. App.3d 359, 362, 666 N.E.2d 722 (1st Dist. 1996). (Cpl., ¶11). *Ricketts* is legally and factually distinguishable because *Ricketts* is not an ICAA case, does not involve a state court pleading and does not involve a state court collection complaint. Rather, it is a case about a mechanics lien and the appellate court's interpretation of §7 of the Illinois Mechanic Lien Act ("MLA"). *Id.* at 360.

In *Ricketts*, defendant Father & Son contracted with defendants Ricketts and Malone to do work at 1033 Marshall ("1033"), a property Ricketts and Malone leased. *Id.* at 360. Father & Son did the work and assigned the rights to its mechanic lien under the contract to Candice Co. ("Candice"). *Id.* at 360. Candice recorded the lien and sent copies to Ricketts and Malone. Then Candice filed suit claiming it was entitled to the mechanics lien at 1033. Defendants successfully moved to dismiss and Candice appealed. *Id.* at 360.

On appeal, the court examined the mechanics lien theory. After examining the language in the assignment of the lien from Father & Son to Candice, the court explained a contractor's assignee may file a lien claim. *Id.* at 362. The court noted Candice did not attach the assignment to its complaint despite §2-606's[7] requirements. *Id.* at 363. The court found the lien

---

[6] A case filed in the Municipal District One, for example, is one in which the money damages do not exceed $30,000 (Circuit Court of Cook County General Order No.1.2). Discovery in such cases is limited by S.Ct. Rule 222. For example, no evidence depositions are allowed without leave of court for good cause shown.

[7] Section 2-606 provides: "If a claim or defense is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit or recited therein, unless the pleader attaches to his or her pleading an affidavit stating facts showing that the instrument is not accessible to him or her. In pleading any written instrument a copy thereof may be attached to the

11

unenforceable because it did not accurately describe the parties to contract that formed the basis of the lien in violation of §7 of the MLA, not because Candice failed to comply with §2-606. *Id*. at 363-64.

Plaintiff not only incorrectly cites Section 8b, but also incorrectly cites *Ricketts* to support her theory that Section 8b of the ICAA requires assignments to be attached to a collection complaint when the *Ricketts* has no such holding. As a result, Count II should be dismissed with prejudice.

### B. COUNT I - FDCPA

The FDCPA count is premised on an alleged violation of the ICAA. This count is made against all defendants.

#### 1. Plaintiff improperly uses the FDCPA to enforce the ICAA.

Plaintiff should not be permitted to use the FDCPA to enforce the ICAA. Federal circuit courts have rejected efforts like that plaintiff makes here to transform the FDCPA into a vehicle to enforce state laws. She does not allege that statements in the collection complaint are false or unfair, but objects to the pleading as being insufficient under the ICAA because an assignment was not attached to the pleading. *See Rice v. Great Seneca Financial* 556 F.Supp.2d 792, 799 (S.D.Ohio May 21, 2008)("Conspicuously absent from plaintiff's analysis is any FDCPA case law supporting her contention that such a procedural challenge to a state court pleading-i.e.-, the failure to attach all of the original creditor's documents-violates 15 U.S.C. §§1692e, 1692e(10) or 1692f"). But these alleged violations of Illinois law do not amount to FDCPA claims under federal law.

The *Beler* decision demonstrates the flaw in plaintiff's FDCPA theory based on the ICAA and the ICFA's applicability to collection complaints filed in state court. There, GE Capital Corporation retained Blatt to file a collection suit against plaintiff to collect on her JCPenney debt. *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 472 (7th Cir. 2007). The complaint identified GE Capital Corporation as "GE Capital." *Beler,* at 472. Beler sued Blatt alleging the complaint and supporting affidavit violated §1692e because their description of the contracts among the JCPenney, Monogram Bank and GE Capital was "not clear enough to enable an unsophisticated consumer to understand the relationship among the

---

pleading as an exhibit. In either case the exhibit constitutes a part of the pleading for all purposes." 735 ILCS 5/2-606.

12

merchant, transaction processor and creditor." *Id*. In affirming summary judgment was affirmed for the debt collector law firm, the court stated:

> Section 1692e does not require clarity in all writings....A rule against trickery differs from a command to use plain English and write at a sixth-grade level. <u>Beler does not contend that the complaint was deceptive and that [Blatt] set out to trick her into paying money she does not owe, or to mislead her into paying the wrong person. Whatever shorthand appeared in the complaint – the payments system through which credit card slips flow is complex, and even many lawyers don't grasp all of its details - was harmless rather than an effort to lead anyone astray</u>. *Id*. at 473. (emphasis added).

The Seventh Circuit went on to reject plaintiff's §1692f claim that it is "unfair" or "unconscionable" for a debt collector to violate any other rule of positive law," and specifically held that "§1692f creates its own rules (or authorizes courts and the FTC to do so); it does not so much as hint at being an enforcement mechanism for other rules of state or federal law." *Id*. at 473-4. Thus, an FDCPA claim cannot be premised solely on the basis that a state law was violated. [8]

The *Wade v. Regional Credit Ass'n*., 87 F.3d 1098, 1099 (9th Cir. 1996) decision supports *Beler*. In *Wade*, a collection agency sent a collection letter to a debtor in Idaho, a state in which the agency lacked a state-mandated collection license. The court noted that it had to determine whether violation of Idaho law constituted a violation of the FDCPA as follows:

> All of Wade's claims are based on the call from California and the notices sent to Idaho without a state permit. Idaho law prohibits persons from engaging in "either directly or indirectly in this state in the business of collecting or receiving payment for others of any account, bill, claim or other indebtedness" without obtaining a permit. Although RCA may have contravened this provision, we must determine not whether RCA violated the state statute, but whether it violated the federal Act. We disagree with Wade that debt collection practices in violation of state law are per se violations of the FDCPA. *Id.* at 1100.

In finding that violation of Idaho law did not violate the FDCPA, the court found that the violations of state law were "innocuous" and not threatening, false, unfair or unconscionable.

---

[8] *See Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004)("The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation."); *Harvey v. Great Seneca Fin. Corp., et al*., 453 F.3d 324, 330-31 (6th Cir. 2006)("Even when viewed from the perspective of the unsophisticated consumer, the filing of a debt-collection lawsuit…..does not have the natural consequence of harassing, abusing or oppressing the debtor. Any attempt to collect a defaulted debt will be unwanted…but employing the court system…cannot be said to be an abusive tactic under the FDCPA.").

13

Similarly, in *Olvera v. Blitt & Gaines*, 431 F.3d 285 (7th Cir. 2005), the Seventh Circuit rejected plaintiff's claim against a debt buyer for charging interest that was authorized by the credit agreement but allegedly higher than the ceiling imposed by an Illinois statute (815 ILCS §205/5) was a "stretch, and not merely semantically; it makes the federal statute a vehicle for enforcing a state law, and why would Congress want to do that?" *Id.* at 287.

Plaintiff's allegations, if taken to their logical conclusion, ask this court to find automatic FDCPA liability for any claim to recover a credit card debt wherein the assignment is not attached to the state court pleading. But the FDCPA does not provide a federal remedy for claims stemming from collection suits. Instead, the FDCPA prohibits and polices collection practices that are in themselves unfair or false. Here, Defendants engaged in no such practice.

**2.   Since Bronson & Migliacco, LLP, H. Bruce Bronson, Jr. and Richard J. Migliaccio are exempt from the ICAA, they did not violate the ICAA or FDCPA, by extension**.

Plaintiff claims that Bronson & Migliaccio, LLP and its alleged general partners H. Bruce Bronson and Richard J. Migliaccio violated the FDCPA because they filed a lawsuit on behalf of CSGA without an assignment that complied with Section 8b attached. Yet Bronson & Migliaccio and its lawyers are exempt from the ICAA. 425/2.03(5):

> This Act does not apply to persons whose collection activities are confined to an are directly related to the operation of a business other than that of a collection agency, and specifically does not include the following:
> \*\*\*
> 5. Licensed attorneys at law.
> \*\*\*

Since the ICAA does not regulate the conduct of Bronson & Migliaccio, LLP or its lawyers, they did not violate the Act and by extension they did not engage in any deceptive or misleading practices under the FDCPA. While they are not exempt from the FDCPA, the plaintiff cannot use a federal statute to enforce an alleged violation of state law, where the state law at issue expressly exempts lawyers.[9]

### C. COUNT III – ICFA

Plaintiff's claim against CSGA brought pursuant to the ICFA should also be dismissed. Plaintiff does not make this claim against CSGA's attorneys, recognizing that the ICFA does not apply to the acts of attorneys. *Shalabi v. The Huntington National Bank*, 2001 WL 777055 (N.D.

---

[9] Moreover, failure to attach an assignment document to a collection complaint is not a deceptive or unfair practice. *See Rice v. Great Seneca Financial* 556 F.Supp.2d 792, 799 (S.D.Ohio May 21, 2008)

14

Ill.); *Cripe v. Leiter*, 184 Ill.2d 185 (1998). It is inconsistent for plaintiff to allege that CSGA is liable under the ICFA for the alleged failure of Bronson & Migliaccio to attach an assignment to the collection lawsuit when the attorneys themselves cannot be liable and CSGA cannot likewise be derivatively liable. *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 720, 733 (N.D. Ill. 2005); *Jackson v. South Holland Dodge, Inc.*, 197 Ill.2d 39 (2001); *Zekman v. Direct Am. Marketers, Inc.*, 182 Ill.2d 359 (1988).

Finally, in order to state a claim under the ICFA, a plaintiff must demonstrate: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." and these elements "must be pled with the same particularity and specificity as that required under common law fraud." *Villasenor v. American Signature, Inc.*, 2008 WL 904888, *3 citing *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 149 (2002). Plaintiff has failed to allege (with particularity and specificity) a deceptive act or practice by defendants. Plaintiff has also failed to allege (with particularity and specificity) intent or actual damages.

The only allegations which even arguably address damages are contained in paragraphs 68 and 69 in which plaintiff speculates, "the filing of collection lawsuits is regularly picked up and reported by credit bureaus" and then concludes, "[p]laintiff and the members of the class were damaged as a result." Such allegations however, fail to identify how plaintiff herself was injured as a result of the alleged failure to attach an assignment to a state court collection complaint, (she does not claim that she suffered any damage to her credit), much less how a class of persons was injured. This Court should dismiss plaintiff's ICFA claim.

                                            Respectfully submitted,

By:  s/*David M. Schultz*
      David M. Schultz

One of the Attorneys for Defendants.

David M. Schultz
Jennifer W. Weller
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000

15

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA TELLIS, individually and on behalf of the class defined herein, ) ) ) | |
| Plaintiff, ) ) | Case No.: 08 CV 2854 |
| v. ) ) | Judge: Darrah |
| CSGA. LLC, BRONSON & MIGLIACCIO, LLP, H. BRUCE BRONSON, JR. and RICHARD J. MIGLIACCIO, ) ) ) ) | Magistrate Judge Cox |
| Defendant. ) ) | |

### NOTICE OF FILING

TO:  Cathleen M. Combs, Daniel A. Edelman,
   Edelman, Combs, Latturner & Goodwin, LLC
   120 South LaSalle Street, 18th Floor
   Chicago, Illinois 60603

   PLEASE TAKE NOTICE that on **September 5, 2008,** we caused to be filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(B)(6)**, in connection with the above entitled cause, a copy of which is attached hereto.

                            Respectfully submitted,

                            HINSHAW & CULBERTSON LLP

David M. Schultz                s/ *David M. Schultz*
Jennifer W. Weller              David M. Schultz
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
312/704-3000
312/704-3001 – facsimile
dschultz@hinshawlaw.com
jweller@hinshawlaw.com

## CERTIFICATE OF SERVICE

    I hereby certify that on **September 5, 2008,** I electronically filed the above and foregoing **NOTICE OF FILING AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(B)(6)** with the Clerk of the U.S. District Court, using the CM/ECF system reflecting service of to be served upon all parties of record.

                              HINSHAW & CULBERTSON LLP

| | |
|---|---|
| David M. Schultz | s/ *David M. Schultz* |
| Jennifer W. Weller | David M. Schultz |
| HINSHAW & CULBERTSON LLP | |
| 222 North LaSalle Street, Suite 300 | |
| Chicago, Illinois 60601 | |
| 312/704-3000 | |
| 312/704-3001 – facsimile | |
| dschultz@hinshawlaw.com | |
| jweller@hinshawlaw.com | |

6358916v1 68212